IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TRANSCANADA USA SERVICES, INC.,

Plaintiff,

v.  Civil Action No. 2:19-cv-00896

ZURICH AMERICAN INSURANCE COMPANY,
a foreign corporation; and
WESTCHESTER FIRE INSURANCE COMPANY,
a foreign corporation,

Defendants.

## COMPLAINT

Plaintiff TransCanada USA Services, Inc. ("TransCanada") states the following for its Complaint against Defendants Zurich American Insurance Company ("Zurich") and Westchester Fire Insurance Company ("Westchester"):

### Preliminary Statement

1. TransCanada brings this Complaint to seek a declaration from the Court that Zurich and/or Westchester owe a duty to indemnify and a duty to defend TransCanada. In addition, because Zurich and Westchester have refused to indemnify and defend TransCanada, this Complaint seeks damages incurred by TransCanada caused by that refusal.

### The Parties

2. TransCanada is a Delaware corporation with a principle place of business in Houston, Texas. TransCanada is authorized to conduct business in West Virginia and actually conducts business in areas within the Southern District of West Virginia.

1

3. Zurich is a New York corporation with a principal place of business in Schaumburg, Illinois. Zurich is authorized to conduct business in West Virginia and actually conducts business in West Virginia.

4. Westchester is a Pennsylvania corporation with a principal place of business in Philadelphia, Pennsylvania. Westchester is authorized to conduct business in West Virginia and actually conducts business in West Virginia.

## Jurisdiction

5. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) as the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and there is complete diversity of citizenship between TransCanada and each Defendant.

6. In addition, under the Declaratory Judgment Act, 28 U.S.C. §2201, this Court has the power to declare the rights and legal relations of TransCanada, Zurich, and Westchester with respect to the rights and duties that Zurich and Westchester owe under certain insurance contracts and coverages reflected on a Certificate of Liability Insurance ("Certificate"). See Exhibit 1 (Certificate).

7. This Court also has personal jurisdiction over Zurich and Westchester as, upon information and belief, both transact business in West Virginia and contract to insure persons, property and/or risks located within West Virginia.

## Factual Background

**Allegations in the Tibbs Complaint.**

8. This action centers on a dispute whereby TransCanada requested that Zurich and Westchester provide both indemnification and a defense for claims asserted by Charles D. Tibbs

against TransCanada and Welded Construction, L.P. ("Welded Construction") in Civil Action No. 19-CV-279 pending in the United States District Court for the Northern District of West Virginia (the "Tibbs Complaint").

9. In the Tibbs Complaint, plaintiff Charles Tibbs alleges that, as an employee of defendant Welded Construction, he received personal injuries during the course of employment while he worked on TransCanada's Leach Xpress pipeline in Marshall County, West Virginia, on or about July 1, 2017. See Exhibit 2 (Tibbs Complaint). Specifically, Mr. Tibbs alleges that he received injuries when a 6,000-pound jack hammer slid off the steel bed of a winch truck and fell on him.

10. Mr. Tibbs further alleges that Welded Construction "provided no training or JSA related to this task for Mr. Tibbs' crew." Complaint at ¶ 11. He also alleges that his crew "lacked certain straps necessary to properly secure loads to the winch truck; a deficiency known to Welded Construction." Complaint at ¶ 11. Finally, Mr. Tibbs contends that he "had no prior experience or training with regard to working as part of a winch truck crew." Complaint at ¶ 10.

11. Mr. Tibbs also alleges that, as the owner of the Leach Xpress pipeline, TransCanada was "responsible for" Welded Construction's "compliance with all applicable OSHA rules and regulations in the operations associated with the Leach Xpress pipeline project." Complaint at ¶ 3. Mr. Tibbs admits however, that on the day of the accident, his "crew was not accompanied by a TransCanada agent . . . ." Complaint at ¶ 11.

12. Finally, Mr. Tibbs asserts a "deliberate intent" claim against Welded Construction pursuant to W. Va. Code §23-4-2(d)(2)(B). While he also asserts a negligence claim against TransCanada, all investigations to date reveal absolutely no negligence on the part of TransCanada as it relates to Mr. Tibbs' accident.

**The TransCanada - Welded Construction Agreement.**

13. On or about March 13, 2015, Welded Construction entered into a General Services Agreement for Construction, Maintenance, Services, and Materials (the "Agreement") with NiSource Corporate Services Company ("NiSource"). The Agreement, under its express terms, inures to the benefit of all direct and indirect subsidiaries of NiSource, which includes TransCanada. A copy of the Agreement is attached as Exhibit 3.

14. Specifically, TransCanada is a subsidiary of TC Energy Corporation, which is the successor in interest to NiSource under the Agreement through TC Energy Corporation's acquisition of Columbia Pipeline Group, a former affiliate of NiSource.

15. As part of the Agreement, Welded Construction agreed to indemnify and hold TransCanada harmless for negligence or omissions on the part of Welded Construction and its employees and contractors. Specifically, Section 4 of the Agreement states:

> (a) To the fullest extent permitted by law, Contractor waives any right of contribution and agrees to indemnify, defend and hold harmless Owner and its parent company, agents, affiliates and employees (collectively "Indemnitees") from and against all claims, damages, losses, **fines, penalties** and expenses, including attorneys' fees, related in any way to (i) any breach of this Agreement by Contractor; or (ii) Contractor's or its Subcontractor's or agents' performance of the Work **(collectively, "Claims")**, provided that any such **"Claims in subsection (a)(ii) above are** caused in whole or in part by any negligent act or omission of Contractor, and Subcontractor or any of its respective direct or indirect employees or agent for who acts any of them may be liable. Such obligation shall not negate, abridge, or otherwise reduce any other right or obligation of indemnity or contribution in favor of the Indemnitees. Such obligation to indemnify, defend and hold harmless shall not be limited in any way by any Contractor or anyone directly or indirectly employed by the Contractor. The obligations of Contractor under this Agreement shall not extend to the liability of the Indemnitees arising out of the Indemnitees sole negligence. Contractor shall impose identical indemnification, defense and hold harmless obligations upon all Subcontractors.

>    (b)    **To the fullest extent permitted by law, Contractor expressly (i) waives the benefit, for itself and all Subcontractors, insofar as the indemnification, defense and hold harmless obligations of Indemnitees are concerned, of the provisions of any applicable workers' compensation law limiting the tort or other liability of any employer on account of injuries to the employer's employees, and (ii) assumes liability in accordance with this Article.**

Agreement at 6 (emphasis in original).

16.  Section 3 of the Agreement required that Welded Construction "shall procure, at its sole cost and expense" certain insurance coverages, including Commercial General Liability (CGL) and Excess or Umbrella Liability coverages. See Agreement 2 at 3, Sec. 3(a).

17.  The Agreement also required that Welded Construction "shall name Owner as Additional Insured under all required insurance policies . . . and shall require any and all subcontractors to do the same." Agreement at 4, Sec. 3(d).

18.  Finally, the Agreement stated that Welded Construction agreed that, "with respect to all insurance provided or required in connection with this Agreement as specified below, to endorse and require each policy as such and to: (i) stipulate that such insurance is primary and is not additional to, or contributing with, any other insurance carried by, or for the benefit of Owner . . . ; (ii) waive any and all rights of subrogation against Additional Insured except where not permissible by law; (iii) this insurance shall not be prejudiced as to the Additional Insured by any act or negligence, error, or omission of the Named Insured as respects payment for premium, reporting of claims, or any other duties required of the Named Insured by the Policy." Agreement at 4-5, Sec. 4(d).

>    **Welded Constructions CGL coverage with Zurich and Umbrella Liability coverage with Westchester.**

19.  Pursuant to its obligations under the Agreement, Welded Construction sought and

obtained insurance coverages through McGriff, Seibels & Williams ("McGriff"), an insurance brokerage firm.

20. Specifically, and as relevant to TransCanada's demand for indemnification and a defense, Welded Construction obtained Commercial General Liability (CGL) coverage from Zurich and Umbrella Liability (Umbrella) coverage from Westchester. See Certificate.

21. Per the Certificate, Zurich and Westchester acknowledged that "Columbia Pipeline Group Service Company *and its entities and/or respective Affiliates* are named as Additional Insured as respects General Liability, . . . and Umbrella Liability as required by written contract."

22. In addition, the Certificate states that "[w]aiver of Subrogation applies in favor of Columbia Pipeline Group Services Company and its entities and/or respective Affiliates with respect to General Liability, . . . and Umbrella Liability as required by written contract."

23. Finally, the Certificate notes that "[c]overage is Primary and Non-Contributory with respect to General Liability . . . as required by written contract."

24. Each of these statements on the Certificate reflect acknowledgment by Zurich and Westchester of the terms of the Agreement as they relate to insurance and indemnification.

25. In short, Welded Construction properly obtained CGL and Umbrella Liability coverages as required by the Agreement, and TransCanada was "named as Additional Insured" under the policies issued by Zurich and Westchester, respectively, as required by the Agreement and reflected on the Certificate.

**TransCanada's efforts to require Zurich and Westchester fulfill its obligations to indemnify and defend.**

26. For unknown reasons, Zurich and Westchester have completely ignored TransCanada's efforts to obtain confirmation of indemnification and a defense prior to being forced to file this Complaint.

27. Specifically, upon information and belief, Zurich and/or Westchester retained the law firm of Cipriani & Warner, P.C., in Wheeling, West Virginia, to represent Welded Construction in the civil action filed by Mr. Tibbs.

28. As detailed in the Complaint, Welded Construction filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware in 2018. The Bankruptcy Court, however, lifted the automatic stay to the extent that applicable insurance proceeds may be available to pay any or all claims made against Welded Construction in the Tibbs Complaint. See Order Approving Stipulation Granting Charles Tibbs Limited Relief from the Automatic Stay, attached as Plaintiff's Exhibit A to Complaint.

29. As a result, Zurich and/or Westchester retained counsel for Welded Construction to defend Welded Construction against the allegations and claims in the Tibbs Complaint.

30. Upon service of the Tibbs Complaint on TransCanada, counsel for TransCanada wrote a letter to Philip J. Sbrolla, Esq., the attorney retained by Zurich and/or Westchester to represent Welded Construction in defense of the Tibbs Complaint, dated September 18, 2019, and requested that Welded Construction, through its insurance carriers, fully indemnify TransCanada for all costs and expenses in this matter and asked that Welded Construction's insurance carriers defend all claims against TransCanada asserted in the Tibbs Complaint. Upon information and belief, Mr. Sbrolla agreed to, and did, forward that letter to Zurich and/or Westchester.

31. Neither Zurich nor Westchester responded to that letter, however, and numerous follow-up emails requesting a response from Zurich and/or Westchester were likewise ignored, the most recent of which was sent on November 14, 2019.

32. Counsel for TransCanada made a final effort to have Zurich and Westchester honor their obligations to defend and indemnify TransCanada in defense of the Tibbs Complaint by letter

dated December 4, 2019, but both Zurich and Westchester again ignored the request.

33. As a result, TransCanada is forced to bring this Complaint.

## COUNT I - REQUEST FOR DECLARATORY JUDGMENT

34. Paragraphs 1 through 33 of this Complaint are incorporated here by reference and are realleged as if fully set forth herein.

35. A justiciable controversy exists between the parties to this action with respect to the scope, meaning, and application of the policies of insurance issued by Zurich and by Westchester, respectively, and whether Zurich and/or Westchester owe a duty of defense and a duty of indemnification to TransCanada.

36. The legal rights and obligations of the parties hereto are dependent upon this Court's declaration of the scope, meaning and application of the policies issued by Zurich and by Westchester, respectively, and to the extent that issues of fact impact such scope, meaning and application of either of those insurance policies to the facts presented in this civil action, a jury in the Southern District of West Virginia must make such findings of fact.

37. TransCanada asks that the Court declare that, under the terms of the policies, Zurich and Westchester are legally obligated to provide a defense to TransCanada in reference to the claims made against TransCanada in the Tibbs Complaint.

38. TransCanada also asks the Court to declare that, under the terms of the policies, Zurich and Westchester are legally obligated to indemnify TransCanada in reference to the claims made against TransCanada in the Tibbs Complaint.

39. TransCanada further asks the Court to declare that, pursuant to the legal obligation of Zurich and Westchester to defend and indemnify TransCanada, both Zurich and Westchester are jointly liable to pay TransCanada all costs and expenses, including attorneys' fees and

expenses, incurred by TransCanada to defend itself against the assertions in the Tibbs Complaint and in seeking to enforce its right to have Zurich and Westchester defend and indemnify it.

## COUNT II - BREACH OF CONTRACT

40. Paragraphs 1 through 39 of this Complaint are incorporated here by reference and are realleged as if fully set forth herein.

41. The insurance policies issued by Zurich and by Westchester represent written contracts, and as additional named insured under each policy, TransCanada is entitled to receive the benefits provided by those contracts, including the obligation of Zurich and Westchester to defend and indemnify it in defense of the Tibbs Complaint.

42. Zurich and Westchester have negligently, willfully, wantonly, recklessly, and maliciously breached these contractual duties by failing to defend or indemnify TransCanada in relation to the Tibbs Complaint.

43. As a result, TransCanada has suffered and will continue to suffer damages, including monetary losses, annoyance, inconvenience, aggravation, and attorneys' fees and expenses.

## COUNT III: VIOLATIONS OF UNFAIR TRADE PRACTICES ACT

44. Paragraphs 1 through 43 of this Complaint are incorporated here by reference and are realleged as if fully set forth herein.

45. Under W. Va. Code § 33-11-4(1)(a), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to make a misrepresentation concerning the benefits, advantages, conditions or terms of any insurance policy.

46. Under W. Va. Code § 33-11-4(9)(a), it is an unfair method of competition and an

unfair or deceptive act or practice in the business of insurance for a person to misrepresent pertinent facts or insurance policy provisions relating to coverages at issue.

47. Under W. Va. Code § 33-11-4(9)(b), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to fail to acknowledge and act promptly upon communications with respect to claims arising under insurance policies.

48. Under W. Va. Code § 33-11-4(9)(c), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to fail to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

49. Under W. Va. Code § 33-11-4(9)(d), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to refuse to pay claims without conducting a reasonable investigation based upon all available information.

50. Under W. Va. Code § 33-11-4(9)(e), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to fail to affirm or deny coverage of claims within a reasonable time.

51. Under W. Va. Code § 33-11-4(9)(g), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to compel insureds to institute litigation to recover amounts due under an insurance policy.

52. Under W. Va. Code § 33-11-4(9)(n), it is an unfair method of competition and an unfair or deceptive act or practice in the business of insurance for a person to fail to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

53. The conduct of Zurich and Westchester constitute unfair or deceptive acts or

practices in violation the provisions of the West Virginia Unfair Trade Practices Act, W. Va. Code 33-11-4, as detailed in the paragraphs above.

54. As a result of Zurich's and Westchester's numerous misrepresentations and omissions and unfair or deceptive acts or practices, TransCanada has been injured and has suffered damages in an amount to be determined, including, but not limited to monetary losses, annoyance, inconvenience, aggravation, and attorneys' fees and expenses.

### COUNT IV: NEGLIGENT MISREPRESENTATION

55. Paragraphs 1 through 54 of this Complaint are incorporated here by reference and are realleged as if fully set forth herein.

56. The Certificate clearly and unambiguously states that "Columbia Pipeline Group Service Company and its entities and/or respective Affiliates are named as Additional Insured as respects General Liability, . . . and Umbrella Liability as required by written contract."

57. As neither Zurich nor Westchester have agreed to defend and/or indemnify TransCanada against the claims asserted in the Tibbs Complaint, the statement in the Certificate that TransCanada is a material misrepresentation as to the benefits available to TransCanada as an additional named insured under the insurance policies identified on the Certificate.

58. TransCanada relied upon the misrepresentation in the Certificate that it was an additional named ensured under the insurance coverages provided by Zurich and by Westchester.

59. As a result of Zurich's and Westchester's material misrepresentations, TransCanada has been injured and has suffered damages in an amount to be determined, including, but not limited to monetary losses, annoyance, inconvenience, aggravation, and attorneys' fees and expenses.

## COUNT V - FRAUDULENT MISREPRESENTATION

60. Paragraphs 1 through 59 of this Complaint are incorporated here by reference and are realleged as if fully set forth herein.

61. Zurich and Westchester issued or caused the Certificate to be issued.

62. The Certificate clearly and unambiguously states that "Columbia Pipeline Group Service Company and its entities and/or respective Affiliates are named as Additional Insured as respects General Liability, . . . and Umbrella Liability as required by written contract." As neither Zurich nor Westchester have agreed to defend and indemnify TransCanada against the claims asserted in the Tibbs Complaint, the statement in the Certificate that TransCanada is a material misrepresentation as to the benefits available to TransCanada as an additional named insured under the insurance policies identified on the Certificate.

63. When made, Zurich and Westchester knew the representations were false or knew they were made recklessly without knowledge of whether they were true.

64. TransCanada relied upon the misrepresentation in the Certificate that it was an additional named ensured under the insurance coverages provided by Zurich and by Westchester.

65. As a result of Zurich's and Westchester's material fraudulent misrepresentations, TransCanada has been injured and has suffered damages in an amount to be determined, including, but not limited to monetary losses, annoyance, inconvenience, aggravation, and attorneys' fees and expenses.

## COUNT VI: *HAYSEEDS* CLAIM

66. Paragraphs 1 through 65 of this Complaint are incorporated here by reference and are realleged as if fully set forth herein.

67. Zurich and Westchester breached the insurance policies and Certificate as detailed

in this Complaint by failing to defend and indemnify TransCanada for the claims made in the Tibbs Complaint.

68. TransCanada has had, and continues to have, a dispute with Zurich and Winchester concerning coverage under the insurance policies identified in the Certificate and the benefits available to TransCanada under the terms of those policies and the certificate.

69. TransCanada anticipates that it will substantially prevail with regard to the disputes with Zurich and Westchester concerning coverages and benefits under the policies and Certificate, including that Zurich and/or Westchester owe a duty to defend against and a duty to indemnify for the claims in the Tibbs Complaint.

70. TransCanada has had to engage counsel to defend itself against the claims asserted in the Tibbs Complaint and to secure the coverage and benefits owned them by Zurich and Westchester, including litigation to secure that coverage and those benefits.

71. For all disputes in which TransCanada substantially prevails, including those claims against Zurich and Westchester concerning their failure to meet their obligations under the policies and the Certificate, TransCanada is entitled to recover out-of-pocket expenses, attorneys' fees and expenses incurred, and damages for annoyance and inconvenience as permitted by Hayseeds, Inc. v. State Farm Fire & Cas., 177 W. Va. 323, 352 S.E.2d 73 (1986), and its progeny.

72. The actions and omissions of Zurich and Westchester as described in this Complaint were willful, wanton, and reckless, undertaken with actual malice, in bad faith, and in total disregard of their respective duties to TransCanada, their insured. Zurich and Westchester knew that TransCanada's claims for coverage were proper, but they willfully, maliciously, and intentionally failed to adequately investigate the request for coverage and willfully, maliciously, and intentionally denied and/or failed to respond to the claims for coverage. All of the acts of

Zurich and Westchester were particularly egregious and conducted with actual malice and in bad faith so as to render Zurich and Westchester liable for punitive damages.

WHEREFORE, TransCanada prays that the Court:

A. Grant declaratory relief pursuant to Declaratory Judgment Act, 28 U.S.C. §2201, and declare that Zurich and Westchester owed TransCanada a duty to defend and a duty of indemnification for all claims asserted against TransCanada in the Tibbs Complaint;

B. Award damages in an amount to be determined, including, but not limited to monetary losses, annoyance, inconvenience, aggravation, and attorneys' fees and expenses; and

C. Award TransCanada such other and further relief as this Court deems just and proper.

To the extent that material issues of fact exist for any of the causes of action contained in this complaint, TransCanada asks for a jury trial.

TRANSCANADA USA SERVICES, INC.

By Counsel

*s/ Mychal S. Schulz*
Mychal S. Schulz (WVSB No. 6092)
Shannon L. Rutherford (WVSB No. (13681)
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charleston, West Virginia 25301
(681) 205-8888
(681) 205-8814 (fax)
mschulz@babstcalland.com
srutherford@babstcalland.com
*Counsel for TransCanada USA Services, Inc.*