**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**TRANSCANADA USA SERVICES, INC.,**

**Plaintiff,**

v.                                                              Civil Action No. **2:19-cv-00896**

**ZURICH AMERICAN INSURANCE COMPANY,**
a foreign corporation; and
**WESTCHESTER FIRE INSURANCE COMPANY,**
a foreign corporation,

**Defendants.**

**PLAINTIFF'S RESPONSE TO ZURICH AMERICAN INSURANCE
COMPANY'S MOTION TO DISMISS OR IN THE ALTERNATIVE
STAY ACTION UNDER 11 U.S.C. §362(a)**

Plaintiff TransCanada USA Services, Inc. ("TransCanada") responds to and opposes the Motion to Dismiss or in the Alternative Stay Action Under 11 U.S.C. §362(a) ("Motion") filed by Defendants Zurich American Insurance Company ("Zurich"). Because Zurich does not identify any "unusual circumstances" required under §363(a)(1) for a stay of claims against a non-debtor, and because the insurance *proceeds* available under Zurich's insurance policies do not represent assets of debtor Welded Construction, L.P. ("Welded"), the Motion should be denied.

**I.    BACKGROUND.**

As a preliminary matter, TransCanada emphasizes that all of the allegations asserted in the Complaint filed in this matter must be taken as true when addressing whether to grant the Motion. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007). As these allegations make clear, TransCanada asserts no claims against Welded in this civil action, seeks no declaration of any kind concerning

1

the General Services Agreement for Construction, Maintenance, Services, and Materials (the "Agreement") between Welded and NiSource Corporate Services Company ("NiSource"), TransCanada's predecessor-in-interest, and makes no claim for relief that impact's Welded's bankruptcy estate.

In addition, TransCanada agrees with Zurich that whether TransCanada's claims are subject to a bankruptcy stay is a question for this Court to determine. Holland v. High Power Energy, 248 B.R. 53, 56 (S.D.W.Va. 2000) (District Court maintains "jurisdiction independent of the bankruptcy court to determine whether a pending civil action is subject to the automatic stay.").

### A. TransCanada's claims focus solely on insurance policies issued by Zurich.

As detailed in the Complaint, TransCanada's claims in this civil action stem from personal injury claims asserted by Charles D. Tibbs, a Welded employee, against both TransCanada and Welded currently pending in Civil Action No. 19-CV-279 pending in the United States District Court for the Northern District of West Virginia (the "Tibbs Complaint"). The Agreement contemplated the situation presented in the Tibbs Complaint, i.e., personal injury claims against TransCanada arising from work performed by Welded, which led to Zurich issuing both a Commercial General Liability (CGL) and a Business Auto insurance policy, under both of which TransCanada is an additional named insured. Complaint at ¶ 25.[1]

As a result, TransCanada's claims focus on (1) Zurich's (not Welded's) failure to meet its legal duties to TransCanada as a first-party insured under both the CGL and Business Auto policies (Complaint at ¶¶ 35-70), and (2) whether Zurich owes a duty to defend and/or indemnify TransCanada under either or both policies for the claims asserted in the Tibbs Complaint

---

[1] While the Complaint focuses on coverage for TransCanada under the CGL policy, Zurich provided TransCanada with a copy of the Business Auto policy after TransCanada filed the Complaint, and that policy names TransCanada as an additional named insured.

(Complaint at ¶¶ 35-39). TransCanada does *not* ask for this Court to address or make any declaration concerning Welded's contractual agreements to defend or indemnify TransCanada under the Agreement. In short, the focus of the Court in this case must be on Zurich's insurance policies and Zurich's conduct towards TransCanada, neither of which impact Welded's bankruptcy estate.

      **B.**    **Zurich's CGL and Business Auto Policies both cover TransCanada as a first-party insured -- and Zurich has already agreed to defend and indemnify TransCanada under the Business Auto Policy.**

The CGL and the Business Auto policies -- each of which Zurich provided to TransCanada only *after* the filing of this lawsuit -- conclusively demonstrate what TransCanada could only allege in its Complaint; i.e., that TransCanada is a first-party, named insured under both policies:

- Endorsement U-GL-1114-A CW of the CGL policy expands the definition of "Named Insured" to include "[a]ny person or organization, other than an architect, engineer or surveyor, whom you are required to add as an additional insured under this policy under a written contract or written agreement executed prior to loss." See Exhibit 1 (Endorsement U-GL-1114-A CW) (ZUR 000064), which was part of Exhibit 1 to the Motion. As the Agreement required Welded to add TransCanada as an additional insured under a CGL policy, TransCanada is a Named Insured under the terms of the CGL policy.

- Endorsement No. CA 20 48 10 13 (Designated Insured for Covered Autos Liability Coverage) of the Business Auto policy expands the definition of "you" under the Auto Policy to include the following: "Any person or organization to whom or which you are required to additional insured status or additional insured status or additional insured status on a primary, non-contributory basis, in a written contract or written agreement executed prior to loss, to provide, except where such contract or agreement is prohibited by law." See Exhibit 2 (Endorsement No. CA 20 48 10 13) (ZUR 000234), which was part of Exhibit 2 to the Motion. As with the CGL policy, this language, which is discombobulated in the original, expands the definition of "you" under the Business Auto policy to include TransCanada.

Notably, TransCanada has yet to formally receive a response from Zurich on TransCanada's request for a defense and indemnification in the Tibbs Complaint, despite having first made the request by letter dated September 18, 2019. Complaint at ¶ 30). Subsequent requests were likewise ignored (Complaint at ¶¶ 31-32), and even now, after the filing of this civil action,

Zurich has failed to formally respond to TransCanada's request. On January 31, 2020, however, Zurich informally informed TransCanada, through its counsel, that, "[s]ubject to a full and complete reservation of rights, Zurich is going to provide a defense to TransCanada in the Tibbs matter under the Welded Business Auto Policy. As mentioned, this defense is under a ROR and a formal reservation of rights letter is forthcoming." See Exhibit 3 (Email, Jack D. Hoblitzell, Esq., to Mychal S. Schulz, Esq., dated January 31, 2020).

Instead of simply formally accepting TransCanada's request for a defense and indemnification under the Business Auto policy, Zurich instead filed its Motion and forces TransCanada, its first-party insureds, to continue to expend time and resources responding to a Motion that invents reasons to stay or dismiss TransCanada's claims and that attempts to reverse the Bankruptcy Court's decision to lift the stay against Welded to the extent that insurance policies exist to pay monies related to the Tibbs Complaint.

## II. ARGUMENT.

Zurich asks to dismiss or stay TransCanada's claims under 11 U.S.C. §362(a)(1) and 11 U.S.C. §362(a)(3). A stay under §362(a)(1) here, however, requires "unusual circumstances" because TransCanada's claims are against non-debtors, and Zurich fails to demonstrate any "unusual circumstances" to justify a stay. Likewise, a stay under §362(a)(3) is not warranted because any insurance proceeds available under Zurich's insurance policies -- including TransCanada's defense costs -- do not represent assets of Welded, and the Bankruptcy Court has already lifted the bankruptcy stay to the extent that insurance proceeds are available in connection with the Tibbs Complaint. See Exhibit 4 (Order Approving Stipulation Granting Charles Tibbs Limited Relief from the Automatic Stay, attached to Tibbs Complaint as Exhibit A), p. 2 ("The sole and exclusive right and remedy of []Tibbs] regarding the enforcement of any of the claims,

causes of action and damages asserted against the Debtors and their estates . . . shall be limited to the liquidation of such claims, causes of actions and damages against the Debtors and their estates and recovery or payments on accounts of such claims, causes of action and damages solely from any Insurance Proceeds.").

### A. A stay under § 362(a)(1) only applies to claims against a debtor absent a showing of "unusual circumstances", and Zurich fails to identify any "unusual circumstances" to justify a stay under §362(a)(1).

§362(a)(1) generally operates to stay proceedings "against a debtor" and not against non-debtors such as insurers or co-defendants who may have some connection with the debtor. A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986), *cert. denied*, 479 U.S. 876, 93 L. Ed. 2d 177, 107 S. Ct. 251 (1986); Carway v. Progressive County Mut. Ins. Co., 183 B.R. 769, 774 (S.D. Tex. 1995). Some courts acknowledge an exception to this general rule, such as "when . . . actions involve property of the bankruptcy estate or would have a significant impact on the debtor's ability to reorganize." Carway, 183 B.R. at 775. To justify extension of a stay under §362(a)(1) to claims against a non-debtor, however, "unusual circumstances" must exist in which "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." A.H. Robins, 788 F.2d at 999.

Here, Zurich fails to identify any "unusual circumstances" to justify extension of the automatic stay under §362(a)(1) to TransCanada's claims. Certainly, whether Zurich owes a duty to defend and indemnify TransCanada under the terms of Zurich's own policies have no impact on the ability of Welded to reorganize its affairs in bankruptcy. Carway, 183 B.R. at 775. Likewise, neither a determination of TransCanada's legal rights under those insurance policies nor any monies that Zurich must pay under those insurance policies impact "property of the

bankruptcy estate" -- as the Bankruptcy Court implicitly recognized when it lifted the automatic stay to the extent that insurance proceeds may be available to pay any or all claims related to the Tibbs Complaint. Carway, 183 B.R. at 775; Complaint at ¶ 28.

Zurich attempts to manufacture "unusual circumstances" by arguing that "[i]f the Court were to find in favor of TransCanada and determine that [Zurich] has a duty to defend and indemnify TransCanada it would essentially constitute a judgement against Welded[]" because the CGL policy contains a Self-Insured Retention Endorsement of $250,000. Memorandum in Support of Motion, pp. 7-8. This argument, however, ignores Zurich's direct obligations to TransCanada under the Business Auto Policy, which has no SIR. It also assumes that the SIR for the CGL policy allows Zurich to completely evade providing any insurance coverage to third-parties simply because Welded is in bankruptcy -- a position routinely rejected by courts.[2]

**1. Zurich's Business Auto policy does not contain an SIR; hence, that policy does not potentially impact Welded's bankruptcy estate.**

As noted above, Zurich admits that (1) the Business Auto policy provides coverage to TransCanada for the Tibbs Complaint, and (2) no SIR exists for the Business Auto policy. While Zurich claims that the Business Auto policy contains certain small deductibles for comprehensive damage and collision, the Tibbs Complaint contains claims for personal injuries only, and not damages to a motor vehicle. Memorandum at 3. Indeed, Zurich has *informally* agreed to provide coverage to TransCanada under the Business Auto policy, though it has yet to issue a formal position, which forces TransCanada to expend resources in responding to the Motion. Obviously, if the Court "were to rule in favor of TransCanada and determine that

---

[2] As discussed below, courts routinely enforce an insurer's obligations under an insurance policy when the primary named insured cannot pay the SIR, whether that inability stems from the primary named insured's bankruptcy, insolvency, or inactive or defunct status.

6

[Zurich] has a duty to defend and indemnify TransCanada" under the Business Auto policy, such a decision would not "essentially constitute a judgment against Welded." Memorandum at 7.

> 2. **Courts do not necessarily allow insurers to evade duties to defend and indemnify under SIRs because the primary named insured enters bankruptcy.**

Zurich argues that coverage for TransCanada under the CGL policy is subject to a $250,000 SIR that must be paid by Welded before Zurich owes any obligations under the CGL policy. Memorandum at 8. As a result, Zurich argues, any effort by TransCanada to obtain coverage under the CGL necessarily impacts Welded's bankruptcy estate, which must pay the SIR even if such coverage is provided to TransCanada as a first-party insured.

Zurich's position, however, has been routinely rejected by courts around the country, primarily, but not only, because Zurich agreed in the CGL policy that "[b]ankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under" the CGL policy. See ZUR000058 in Exhibit 1 of Motion to Dismiss. The presence of this "Bankruptcy Clause" creates, at best, an ambiguity as to whether Zurich owes any duties of indemnification and defense under the CGL policy before Welded pays the SIR -- an ambiguity that must be resolved against the insurer. Nationwide Prop. & Cas. v. Comer, 559 F.Supp.2d 685, 690 (S.D.W.Va. 2008) ("[A]mbiguities in insurance policy language are resolved against the insurer."); Zurich Ins. Co. v. Uptowner Inns, Inc., 740 F.Supp. 404, 407 (S.D.W.Va. 1990) ("[I]t is well established that any conflicts and/or ambiguities [in an insurance policy] must be resolved against the insurer."). As the court observed in In re Grace Ind., Inc., 341 B.R. 399, 403 (E.D.N.Y. 2006), allowing an insurer to avoid any obligations under a liability policy when the debtor fails to pay a deductible or SIR "would permit an insurer to avoid its obligations under the insurance policy by reason of the insured's bankruptcy, a result which is at odds with the

[Bankruptcy Clause in] the Policy . . . ." See also Sturgill v. Beach at Mason Limited Partnership, 2015 U.S. Dist. LEXIS 142490, **5-7 2015 WL 6163787 (S.D. Ohio Oct. 20, 2015) (summarizing the "great weight of authority from other jurisdictions . . . that the insured's failure to pay a SIR does not relieve the insurer of its contractual duties under the policy." (emphasis in original)); In re FF Acquisition Corp., 422 B.R. 64, 67 (N.D. Miss. 2009) (debtor's failure to fund its SIR did not relieve insurer of its duty under policy to provide defense in personal injury action pending against debtor).

Notably, even without the Bankruptcy Clause in the CGL policy, Zurich may not avoid its duties to defend and indemnify because of Welded's bankruptcy and subsequent failure to pay the SIR. In re: Vanderveer Estates Holding, LLC, 328 B.R. 18, 25 (E.D.N.Y. 2005) ("case law interpreting § 365 of the Bankruptcy Code makes it clear that even in the absence of an applicable statutory provision [that requires a Bankruptcy Clause], the failure of a bankrupt insured to fund a self-insured retention does not relieve the insurer of the obligation to pay claims under the policy.").

Here, TransCanada requests this Court to determine the rights and obligations of TransCanada and Zurich under both the CGL policy and the Business Auto policy. Under the CGL policy, whatever decision the Court makes relative to the SIR may impact the amount of proceeds available under the policies, but the SIR does not impact the breadth or scope of Zurich's obligations under the policies. More importantly, the Court's decision will not adversely impact Welded's bankruptcy estate as TransCanada acknowledges that this Court may not order Welded to pay the SIR.[3] Likewise, any theoretical claim that TransCanada may have

---

[3] TransCanada acknowledges that this Court may ultimately determine that Mr. Tibbs, Zurich, TransCanada, or some combination of these parties may ultimately be made to bear the financial burden of the SIR, in which case the aggrieved party will have to file a claim against Welded in the bankruptcy court for the amount of the SIR that the

against Welded arising out of the SIR is irrelevant because TransCanada brought no claims in this case against Welded under the Agreement.

In short, notwithstanding Zurich's contention otherwise, no "unusual circumstances" exist under §362(a)(1) to justify extending the bankruptcy stay to TransCanada's claims against Zurich in this matter.

> **B.  A stay under §362(a)(3) does not apply to TranCanada's claims against Zurich because proceeds from the CGL and Business Auto policies do not represent "property" of Welded subject to the automatic stay.**

Zurich's Motion confuses the CGL and Business Auto policies themselves with the proceeds available under those policies, which are not and never will become property of Welded.

Any insurance proceeds available under the CGL or Business Auto policies for coverage provided to TransCanada, whether in the form of payments to the Plaintiff in the Tibbs Complaint or for defense costs incurred by TransCanada in defending against Tibbs Complaint, will be paid by Zurich directly to the Plaintiffs and/or TransCanada. None of the proceeds go to Welded, and none become part of Welded's bankruptcy estate. Further, Welded does not have any right to any of the proceeds from these policies. In these circumstances, all proceeds from the CGL and Business Auto policies represent payments to third-parties, not Welded, and therefore fall outside Welded's bankruptcy estate.

In Houston v. Edgeworth (In re. Edgewood), 993 F.2d 51, 55-56 (5th Cir. 1993), the court examined whether proceeds from a medical malpractice insurance policy purchased by the debtor physician represented property of the bankruptcy estate. The court determined that the "overriding question when determining whether insurance proceeds are property of the estate is

---

aggrieved party had to bear. That fact, however, does not affect the ability of this Court to determine Zuirch's duties to TransCanada under the policies at issue.

whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim." In determining that the proceeds of the insurance policy were not a part of the bankruptcy estate, the court stated that, "[w]hen a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate." In re. Edgewood, 993 F.2d at 55-56. The court concluded that, "under the typical liability policy, the debtor will not have a cognizable interest in the proceeds of the policy. Those proceeds will normally be payable only for the benefit of those harmed by the debtor under the terms of the insurance contract." In re. Edgewood, 993 F.2d at 56. See also Santa Fe Minerals, Inc. v. BEPCO, L.P., 382 B.R. 652, 688 (Bkr. Ct. Del 2008) (finding that proceeds of liability insurance proceeds were not part of debtor's estate and not subject to bankruptcy stay); In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1401 (5th Cir. 1987) (holding that the proceeds of a D&O liability policy were not property of the estate even though the debtor owned the policy because the obligation of the insurance company was solely to the beneficiaries, not the owner of the policy).

  The exact same logic applies to proceeds from, Zurich's CGL and Business Auto policies. TransCanada seeks a declaration that Zurich owes indemnification under the policies, the payment of which, if any, would be made to the Plaintiff in Tibbs Complaint, and not to Welded. Likewise, TransCanada seeks a declaration that Zurich owes a defense to TransCanada under the policies, and all defense costs per that duty would be made to TransCanada, and not Welded. As a result, none of the proceeds that Zurich must pay under the CGL or Business Auto policies represent property of Welded, and a stay under §362(a)(3) is not warranted.

### III. CONCLUSION

Zurich asks this Court to either dismiss or stay TransCanada's claims because it contends that that automatic bankruptcy stay under Welded's bankruptcy extends to Zurich under §362(a)(1) and (a)(3). Zurich fails, however, to identify any "unusual circumstances" that justify extending the automatic stay to claims against a non-debtor as required by §362(a)(1). Likewise, Zurich fails to justify extension of the automatic stay under §362(a)(3) because no proceeds payable under Zurich's CGL or Business Auto policies represent "property" of Welded subject to the stay.

Instead, Zurich seeks to further obfuscate and delay fulfilling its obligations to TransCanada under the CGL and Business Auto policies, failing to even formally respond to TransCanada's request for a defense and indemnification even now, over two months after TransCanada filed its Complaint and almost two months after Zurich admitted receipt of the Complaint. This abject failure of Zurich not only exemplifies its ongoing violations of the West Virginia Unfair Trade Practices Act, but it forces TransCanada, as a first-party insured, to continue to spend time and resources fighting its own insurer for the coverage that is has under the CGL and Business Auto policies.

For all these reasons, TransCanada asks that the Court deny the Motion and allow TransCanada to continue to prosecute its claims against Zurich in this civil action.

**TRANSCANADA USA SERVICES, INC.**

**By Counsel**

*s/ Mychal S. Schulz*
Mychal S. Schulz (WVSB No. 6092)
Shannon L. Rutherford (WVSB No. (13681)
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charleston, West Virginia 25301
(681) 205-8888
(681) 205-8814 (fax)
mschulz@babstcalland.com
srutherford@babstcalland.com
*Counsel for TransCanada USA Services, Inc.*

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**TRANSCANADA USA SERVICES, INC.,**

**Plaintiff,**

v.                      Civil Action No. **2:19-cv-00896**

**ZURICH AMERICAN INSURANCE COMPANY,**
a foreign corporation; and
**WESTCHESTER FIRE INSURANCE COMPANY,**
a foreign corporation,

**Defendants.**

### CERTIFICATE OF SERVICE

As counsel for the Plaintiff, TransCanada USA Services, Inc., I certify that on February 18, 2020 I served the foregoing ***PLAINTIFF'S RESPONSE TO ZURICH AMERICAN INSURANCE COMPANY'S MOTION TO DISMISS OR IN THE ALTERNATIVE STAY ACTION UNDER 11 U.S.C. §362(a)*** by filing the same to the Court's CM/ECF System, which will send notification of such filing to counsel of record.

John D. Hoblitzell, III
Erin J. Webb
Kay Casto & Chaney, PLLC
707 Virginia St. East, 15th Floor
Charleston, WV 25301
*Counsel for Zurich American Insurance Company*

Matthew J. Perry
Lamp Bartram Levy Trautwein & Perry
P.O. Box 2488
Huntington, WV 25725
*Counsel for Westchester Fire Insurance Company*

                                                    *s/ Mychal S. Schulz*
                                                    Mychal S. Schulz