# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

TRANSCANADA USA SERVICES, INC.,

        Plaintiff,

v.                                      CIVIL ACTION NO. 2:19-cv-00896

ZURICH AMERICAN INSURANCE COMPANY and
WESTCHESTER FIRE INSURANCE COMPANY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Motion to Dismiss or in the Alternative Stay Action Under 11 U.S.C. §362(a)* (Document 11), *Memorandum in Support of Motion to Dismiss or in the Alternative Stay Action Under 11 U.S.C. §362(a)* (Document 12), *Plaintiff's Response to Zurich American Insurance Company's Motion to Dismiss or in the Alternative Stay Action Under 11 U.S.C. §362(a)* (Document 13), the *Reply in Support of Motion to Dismiss or in the Alternative Stay Action Under 11 U.S.C. §362(a)* (Document 14), the *Complaint* (Document 1), and all attached exhibits. For the reasons stated herein, the Court finds that this case should be stayed pursuant to the automatic stay provisions under 11 U.S.C. § 362(a).

## FACTUAL AND PROCEDURAL BACKGROUND

The present action stems from personal injury claims asserted by Charles Tibbs in Civil Action No. 19-CV-279, currently pending in the United States District Court for the Northern District of West Virginia, against both TransCanada USA Services, Inc. (TransCanada) and

Welded Construction, L.P. (Welded). Mr. Tibbs was employed by Welded and alleges that he was injured when a 6,000-pound jack hammer fell off the bed of a truck in September 2017 while he was working for Welded on TransCanada's Leach Xpress pipeline in Marshall County, West Virginia.

In March 2015, Welded entered into a General Services Agreement for Construction, Maintenance, Services, and Materials (Agreement) with NiSource Corporate Services Company (NiSource). TransCanada is a subsidiary of TC Energy Corporation, which became successor in interest to NiSource under the Agreement. The Agreement, under its express terms, benefits all direct and indirect subsidiaries of NiSource, which includes TransCanada. As part of the Agreement, Welded "agreed to indemnify and hold TransCanada harmless for negligence or omissions on the part of [Welded] and its employees and contractors." (Compl. at ¶ 15.)

Pursuant to the Agreement, Zurich American Insurance Company (Zurich) issued both a Commercial General Liability (CGL) and a Business Auto Insurance Policy, under both of which TransCanada is an additional named insured. Welded also obtained Umbrella Liability coverage from Westchester Fire Insurance Company (Westchester). Zurich and Westchester acknowledged, through the issued Certificate, that TransCanada was an additional named insured under the CGL and Umbrella Liability insurance policies, and that TransCanada's insurance coverage was "Primary and Non-Contributory with respect to General Liability . . . as required by the written contract." (Compl. at ¶ 21-23.)

In October 2018, Welded filed for Chapter 11 Bankruptcy in the District of Delaware.[1] Prior to filing suit, Mr. Tibbs entered into a stipulation with Welded that modified the automatic

---

1 The pending bankruptcy proceeding is *In re: Welded Construction, L.P., et al.*, Case No. 18-12378 (KG).

stay to allow Mr. Tibbs to pursue his claims against Welded's applicable insurance policies. As part of the stipulation, Mr. Tibbs waived and released any right to recover from assets or property of Welded and its estate, other than any applicable insurance proceeds. The Bankruptcy Court entered an order on June 3, 2019, approving the stipulation.

Thereafter, on August 23, 2019, Tibbs filed his Complaint against Welded, TransCanada, and John Doe Entities 1-10 in the Circuit Court of Marshall County, West Virginia. On September 27, 2019, Welded and TransCanada jointly removed the civil action to the United States District Court for the Northern District of West Virginia, based on diversity of citizenship.

In the current action, TransCanada seeks a declaratory judgment that Zurich and/or Westchester have a duty to defend and indemnify it under insurance policies issued to Welded for the underlying claims brought by Mr. Tibbs against TransCanada and Welded in the civil action pending in the Northern District of West Virginia. TransCanada also seeks damages for breach of contract, violations of the West Virginia Unfair Trade Practices Act, negligent misrepresentation, fraudulent misrepresentation, and *Hayseeds* claims.

Zurich has moved to dismiss this action or in the alternative to stay it under 11 U.S.C. § 362 (a) (1) and (3) on the basis that it was filed in violation of the Automatic Bankruptcy Stay existing as a result of Welded's Chapter 11 Bankruptcy petition pending in the United States Bankruptcy Court for the District of Delaware.

**DISCUSSION**

The Bankruptcy Code provides that all proceedings against the bankruptcy debtor and all actions to exercise control over or obtain possession of property of the bankruptcy estate are automatically stayed upon the filing of a Chapter 11 bankruptcy petition. 11 U.S.C. § 362(a)(1),

3

(3); *Kriesler v. Goldberg*, 478 F.3d 209, 212−13 (4th Cir. 2007). "Once a debtor files a bankruptcy petition, the automatic stay of 11 U.S.C. § 362(a) arises to protect debtors by providing them with 'a breathing spell' and also to protect creditors by 'promoting orderly and fair distribution among creditors.'" *In re Addison*, 533 B.R. 520, 524 (Bankr. W.D. Va. 2015), *aff'd*, No. 1:15-cv-00041, 2016 WL 223771 (W.D. Va. Jan. 19, 2016) (quoting *Shaw v. Ehrlich*, 294 B.R. 260, 267 (W.D. Va. 2003)). The automatic stay "protects debtors not only from the commencement or continuation of legal actions against them, but also from any acts to obtain possession of, create or enforce liens against, or collect assets included in the debtor's estate." *In re Sexton*, 508 B.R. 646, 657 (Bankr. W.D. Va. 2014) (Connelly, J.) (noting that the "stay is the most powerful protection the Bankruptcy Code affords debtors").

Zurich argues that this action should be dismissed or stayed for two reasons: (1) this action was filed in violation of the automatic stay provisions under 11 U.S.C. § 362(a)(1), and (2) the insurance policies issued by Zurich to Welded under which TransCanada seeks coverage are property of the bankruptcy estate, subject to the automatic stay provisions of 11 U.S.C. § 362(a)(3).

A. *Unusual Circumstances*

Pursuant to 11 U.S.C. § 362(a)(1), an automatic stay is imposed upon any judicial proceeding "'commenced or [that] could have been commenced against the debtor' at the time of the filing of the bankruptcy proceeding." *Holland v. High Power Energy*, 248 B.R. 53, 57 (S.D. W. Va. 2000). "As a general proposition, the stay imposed under § 362(a)(1) applies only to bar proceedings against the debtor and does not apply to actions against non-debtor third parties or codefendants of the debtor." *Holland*, 248 B.R. at 57. However, under "unusual circumstances" the stay imposed under § 362(a)(1) may be expanded to include non-debtor third parties or

4

codefendants of the debtor. *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), *cert. denied*, 479 U.S. 876 (1986); *Holland*, 248 B.R. at 57.

Unusual circumstances require more than the "mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy petition . . ." *Id.* (quoting *Johns-Manville Sales Corp.*, 26 B.R. 405, 410 (S.D. N.Y. 1983)). Unusual circumstances may arise "when there is such identity between the debtor and the [non-debtor codefendant] that the debtor may be said to be the real party defendant and . . . a judgment against the [non-debtor codefendant] will in effect be a judgment or finding against the debtor." *Piccinin*, 788 F.2d at 999. An example of such an unusual circumstance is "a suit against a third party who is entitled to absolute indemnity by the debtor" as a result of the suit. *Piccinin*, 788 F.2d at 999. This exception does not apply, however, to a situation in which "the third-party codefendant has obligations that are independent and primary, not derivative of those of the debtor." *Holland*, 248 B.R. at 58 (quoting *In re Lockard*, 884 F.2d 1171, 1179 (9th Cir. 1989) (internal quotation marks omitted).

Zurich argues that this case presents unusual circumstances, warranting extension of the stay provisions to itself as a non-debtor. Specifically, Zurich argues that the Agreement imposes indemnity obligations upon Welded and the CGL Policy imposes a direct responsibility upon Welded to pay a $250,000 Self-Insured Retention Endorsement, such that a finding that Zurich owes a duty to defend and indemnify TransCanada would essentially constitute a finding against Welded, in violation of the automatic stay.

Under the CGL policy Zurich issued to Welded for the period beginning May 1, 2017 and ending May 1, 2018, the policy has a Self-Insured Retention Endorsement (SIR) in the amount of $250,000. Zurich asserts that actual payment of the SIR must be made by Welded before any

obligations or liabilities on the part of Zurich are triggered.[2] Zurich further asserts that Welded is also required to pay all defense costs within the SIR amount. Pursuant to the SIR, payments by others, including additional insureds or insurers, do not serve to satisfy the SIR obligations or its obligations to pay defense costs. In addition to the CGL Policy, Welded obtained a commercial Business Automobile Policy,[3] with a policy period beginning May 1, 2017, and ending May 1, 2018, from Zurich. Under both policies, TransCanada is an additional named insured.

The Court finds that 11 U.S.C. § 362(a)(1) does not apply to bar or stay this proceeding. As an initial matter, TransCanada asserts its claims against Zurich, which is a non-debtor entity. Therefore, the stay could only apply upon a finding that "unusual circumstances" are present in this case, warranting the extension of the stay to a non-debtor entity.

First, Zurich argues that an unusual circumstance exists because the Agreement imposes indemnity obligations on Welded. Whether the Agreement imposes indemnity obligations on Welded, however, is not at issue. TransCanada does not seek any kind of declaration pursuant to the Agreement. Instead, TransCanada seeks a declaration regarding whether it is entitled to defense and indemnity *from Zurich* under the applicable insurance policies issued by Zurich.

Second, Zurich argues that the CGL Policy imposes a direct responsibility upon Welded to pay the $250,000 SIR, which constitutes an unusual circumstance. Even if recovery under the CGL Policy should be barred by the SIR due to its potential imposition on Welded's bankruptcy estate, the Business Auto Policy imposes no such obligations upon Welded. Under the Business Auto Policy, recovery by TransCanada would be independent and primary, not derivative of,

---

[2] Policy No. GLO9482433-05.
[3] Policy No. BAP9482441-06.

Welded's right to recovery. If TransCanada prevails in this declaratory judgment action, Zurich, as a non-debtor third party, would be directly liable to TransCanada.

As such, the Court finds that unusual circumstances do not exist in this case. There is no basis for concluding that a sufficient identity between Zurich and Welded exists such that a judgment in this case against Zurich would effectively operate as a judgment against Welded. Therefore, the automatic stay provisions of 11 U.S.C. § 362(a)(1) do not apply.

### B. Property of the Bankruptcy Estate

Pursuant to 11 U.S.C. § 362(a)(3), an automatic stay is imposed upon any act to obtain possession or control over property of the bankruptcy estate. *Kriesler*, 478 F.3d at 214. Under this provision, "courts have held that an action against a third party is barred by § 362(a)(3) when a judgment against the third party would effectively operate to foreclose on property of the bankruptcy estate, depriving a debtor of an interest in property, rather than merely affecting an asset's value." *Kriesler*, 478 F.3d at 214. Property, as defined in the bankruptcy context, is to be interpreted broadly. *Piccinin*, 788 F.2d at 1001.

Zurich argues that the policies issued by Zurich to Welded under which TransCanada seeks coverage are property of the bankruptcy estate. In opposition, TransCanada argues that a stay under § 362(a)(3) is not warranted because any insurance proceeds available under Zurich's insurance policies—including TransCanada's defense costs—do not represent assets of Welded and would, instead, constitute payments to third parties. TransCanada also argues that the Bankruptcy Court has already lifted the bankruptcy stay to the extent that insurance proceeds are available in connection with the Tibbs Complaint.

After careful review of *Piccinin* and the cases cited therein, the Court finds that the policies are, in fact, part of the bankruptcy estate. "Under the weight of authority, insurance contracts have been said to be embraced in this statutory definition of 'property.'" *Piccinin*, 788 F.2d at 1001 (quoting *In re Davis*, 730 F.2d 176, 184 (5th Cir. 1984)). Moreover, "actions 'related to' the bankruptcy proceedings against the insurer or against officers or employees of the debtor who may be entitled to indemnification under such policy or who qualify as additional insureds under the policy are to be stayed under 362(a)(3)." *Id.* at 1001-02. Given this clear language, the insurance policies under which TransCanada is an additional named insured are covered by 362(a)(3). The Court acknowledges that there is Fifth Circuit precedent which could potentially yield a different result in this matter. However, the Court finds *Piccinin* to be binding in this district.

Therefore, the Court finds that the insurance policies at issue are part of the bankruptcy estate and the automatic stay provision under 11 U.S.C. § 362(a)(3) is applicable. The Court further finds that a stay of this action for a period of ninety (90) days is warranted to give TransCanada the opportunity to file an appropriate motion before the bankruptcy court if it chooses to do so.

## CONCLUSION

Wherefore, after careful consideration, the Court **ORDERS** that the *Motion to Dismiss or in the Alternative Stay Action Under 11 U.S.C. §362(a)* (Document 11) be **GRANTED**. Specifically, the Court **ORDERS** that this matter be **stayed for a period of ninety (90) days or until further order of the Court**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 19, 2020

_Irene C. Berger_
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA